UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DANNY B.,[1]

    *Plaintiff*,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[2]

    *Defendant*.

No. 3:21cv178 (MPS)

**RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

    Plaintiff Danny B. brings this action against the Commissioner of Social Security under 42 U.S.C. § 405(g) challenging the denial of his application for supplemental security income under the Social Security Act. On appeal, the Plaintiff argues that the Administrative Law Judge ("ALJ")'s determination of his residual functional capacity was not supported by substantial evidence, that the ALJ "cherry-picked" evidence, and that he failed to develop the record. ECF No. 15. The Commissioner moves for an order affirming the denial of benefits. ECF No. 17. For the reasons set forth below, I grant the Plaintiff's motion to remand the case to the Commissioner for further proceedings.

    I assume familiarity with the Plaintiff's medical history, as summarized in the Plaintiff's statement of facts, ECF No. 15-2, which the Commissioner incorporates and supplements, ECF No. 17-2, and which I adopt and incorporate by reference. I also assume familiarity with the ALJ's

---

[1] As set forth in Chief Judge Underhill's January 8, 2021 Standing Order, this ruling identifies the Plaintiff using his first name and last initial. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).
[2] Plaintiff commenced this action against Andrew M. Saul as the Commissioner of Social Security on February 11, 2021. ECF No. 1. Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Fed. R. Civ. P. 25(d), Commissioner Kijakazi is automatically substituted for Andrew M. Saul as the named defendant. The Clerk of the Court is requested to amend the caption in this case accordingly.

opinion, the record,[3] and the five sequential steps used in the analysis of disability claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

## I.     Standard of Review

"A district court reviewing a final … decision ... [of the Commissioner of Social Security] pursuant to ... the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Lamay v. Astrue*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 30–31 (2d Cir. 2013) (internal quotation marks and citation omitted).

## II.    ALJ's Decision

The ALJ found that the Plaintiff, who was 56 years old as of his alleged onset date, suffered from severe impairments of lumbar spine degenerative disc disease, cervical spine degenerative disc disease, traumatic brain injury, and post-traumatic stress disorder and that he retained the residual functional capacity ("RFC") to perform medium[4] work except that he was limited to simple, routine tasks and occasional contact with the public. R. 25, 30. Based on the testimony of

---

[3] Citations to the administrative record, ECF No. 12, appear as "R." Pagination is to the CM/ECF system's assignment of page numbers rather than the page numbers shown on the bottom right of each page.
[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 CFR § 416.967(c).

a vocational expert, the ALJ determined that there were jobs that the Plaintiff could perform, and therefore he was not disabled at any time between his onset date of October 1, 2018 and March 4, 2020, the date of the decision.[5] R. 30-31.

## III.    Discussion

Plaintiff contends that the ALJ's physical RFC finding that he was capable of medium work is not supported by substantial evidence. He argues that there is no medical opinion that supports the ALJ's finding and the record does not otherwise contain substantial evidence in support of the RFC determination.

The RFC is an assessment of "the most [a claimant] can still do despite [his] limitations," 20 C.F.R. § 416.945(a)(1). An RFC is determined based on "all the relevant evidence" in the record. *Id.* "In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 256-57 (W.D.N.Y. 2018) (alterations in original) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). "The social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018) (internal quotation marks and alterations omitted). Thus, where the record does not contain relevant medical opinion evidence, an ALJ has an "affirmative duty to request RFC assessments from a plaintiff's treating sources." *Felder v. Astrue*, No. 10CV5747 (DLI), 2012 WL 3993594, at *11 (E.D.N.Y. Sept. 11, 2012). "[I]n the absence of a competent medical opinion, an A.L.J. is generally not qualified to assess a claimant's RFC on the basis of bare medical findings....

---

[5]"An application for disability benefits remains in effect until final decision by the [Commissioner] and a claimant will prevail if he can show that he became disabled at any time up to the date of decision." *Cutter v. Colvin*, 673 F. App'x 78, 80 (2d Cir. 2016).

Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself." *Keith v. Berryhill*, No. 1:17CV669(JJM), 2019 WL 2135482, at *3 (W.D.N.Y. May 16, 2019) (internal quotations and citations omitted). "It is error for an A.L.J. to make an RFC determination without opinions from medical professionals concerning the impact of the objective medical evidence on a plaintiff's RFC." *Barnhardt v. Saul*, No. 18-CV-6632, 2020 WL 1330704, at *2 (W.D.N.Y. Mar. 23, 2020). *See Brook v. Kijakazi*, No. 20CV7750, 2022 WL 213994, at *17 (S.D.N.Y. Jan. 25, 2022) ("Courts in this Circuit have held that when an ALJ has to determine an RFC, her failure to request a functional assessment when no such assessment exists in the record or when any such assessments are insufficient constitutes a failure of her duty to develop the record.").

      An ALJ's failure to request RFC assessments may be harmless, and thus no remand warranted, in cases where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013). For example, remand is not warranted when "the ALJ ha[s] [a] number of functional assessments from consultative examiners and some form of functional assessment from a treating source" even if there is no formal RFC assessment in the record. *Staggers v. Colvin*, No. 3:14CV717(JCH), 2015 WL 4751123, at *3 (D. Conn. Aug. 11, 2015). Similarly, remand may not be necessary where the ALJ rejects the medical opinion evidence in the record, but the RFC formulation is supported by substantial evidence of functional capacity in "contemporaneous treatment notes." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017). So, while "it is not *per se* error for an ALJ to make a disability determination without having sought the opinion

of the claimant's treating physician, a decision not to remand assumes that there are no obvious gaps in the record precluding the ALJ from properly assessing the claimant's residual functional capacity." *Downes v. Colvin*, No. 14-CV-7147(JLC), 2015 WL 4481088, at *15 (S.D.N.Y. July 22, 2015) (internal quotation marks and citation omitted). In short, "courts have upheld an ALJ's RFC finding only where the record is clear and, typically, where there is *some* useful assessment of the claimant's limitations from a medical source." *Staggers*, 2015 WL 4751123, at *3.  That is not the case here.

*The RFC is Unsupported by a Medical Opinion*

The ALJ's determination that Plaintiff retained the residual functional capacity to frequently lift or carry objects weighing up to 25 pounds, and to lift objects up to 50 pounds is not supported by any functional assessment or opinion by a medical source.  The ALJ acknowledged Plaintiff had a history of back pain for which he had undergone physical therapy on various occasions.  R. 26.  The ALJ further acknowledged that diagnostic imaging indicated that Plaintiff suffered from spinal impairments.  *Id.* Specifically, an x-ray of the Plaintiff's cervical spine on November 17, 2019 revealed small areas of ossification within the nuchal ligament. R. 641.  An MRI of the Plaintiff's lumbar spine on December 31, 2019 revealed moderate to severe right neuroforaminal stenosis at L4-L5, moderate left neuroforaminal stenosis at L4-L5, mild to moderate bilateral neuroforaminal stenosis at L3-L4, and minute posterior tear noted laterally on the right at L3-L4.  R. 642.  On December 17, 2019, Dr. Jadeja opined that it "is difficult for [Plaintiff] to lift more than 5lb due to his chronic back pain." R. 609. The ALJ found that Dr. Jadeja's opinion was not well-supported and was inconsistent with the medical evidence.  R. 27. Notably, the ALJ commented that Dr. Jadeja's opinion was deficient because it lacked a "specific function-by-function analysis that would be useful in formulating the claimant's residual functional

capacity." R. at 28. The ALJ also found unpersuasive the opinions of the State Agency medical consultants because among other things they did not "include any analysis of the claimant's spinal impairments." R. 27. That is the extent of the opinion evidence in the record regarding spinal impairments. There is no medical opinion undergirding the ALJ's determination of the physical portion of Plaintiff's RFC, in particular, the assessment that the Plaintiff could perform "medium work." Instead, all the medical evidence that ALJ had before him were treatment notes and raw data.

*The record does not otherwise contain substantial evidence in support of the RFC*

The Commissioner asserts that a medical opinion is not required because substantial evidence in the record supports the RFC determination. I disagree.

The Commissioner relies heavily on Plaintiff's past work as evidence supporting the RFC. The Plaintiff worked parttime at a newspaper as a bundler, which entailed lifting bundles of newspapers. R. 26, 55, 579. At the hearing before the ALJ, the Plaintiff testified variously that the bundles weighed "maybe 15, 20 pounds," R. 44, and "maybe 20, 25 pounds." R. 60.[6] But this falls short of constituting substantial evidence that the Plaintiff could, on a full-time basis, frequently lift or carry objects weighing up to 25 pounds, and could lift objects up to 50 pounds. Moreover, after the Plaintiff injured his back in August 2019, he was unable to work as a bundler because he could not lift. R. 44. Instead, he worked as an "inserter," a job that entailed feeding newspaper inserts into a machine and that is classified as "light"[7] work. R. 44, 66. The Plaintiff's work experience therefore fails to support the RFC.

The Plaintiff's hearing testimony as to his lifting capacity also indicated that he could not

---

[6] In his decision, the ALJ recited Plaintiff's testimony that he lifted between 15 and 20 pounds in his job. R. at 26.
[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

meet the lifting requirements of medium work. At the hearing, the ALJ pressed Plaintiff as to whether he could lift 50 pounds to which Plaintiff responded that it "would hurt [his] back." R. 47. The ALJ then asked

> Q. All right. What about 20 pounds?
> A. If I was just doing it once?
> Q. Uh-huh.
> A. Maybe.

R. 48.

The Commissioner also points to the Plaintiff's activities of daily living as substantial evidence supporting the RFC. The Commissioner argues that the Plaintiff "told the ALJ that he drove, helped out with yard work when he could, carried light groceries into the house, visited his girlfriend's house three times per week, visited his cousins' homes, watched movies and television and read the paper." ECF No. 17-1 at 9. But none of these activities speak to any functional limitations caused by Plaintiff's spinal impairments, much less demonstrate his capacity to perform the lifting requirements of medium work.

The Commissioner also maintains that the medical evidence supports the RFC. Specifically, the Commissioner argues that record reflects "largely normal physical examination findings" and that the Plaintiff "exhibited tenderness on only two occasions" and limited strength and range of motion once during a physical therapy session in December 2019. ECF No. 17-1 at 8. The Commissioner emphasizes that Plaintiff's pain was treated with "conservative treatment" and that he "did not undergo injections or surgery." ECF No. 17-1 at 7-8.

Although the Commissioner correctly notes that the record contains some findings of normal range of motion and muscle tone and negative straight leg raising, *see e.g*. R. 632 (medical note dated October 11, 2019 stating "musculoskeletal: normal range of motion"), these findings are insufficient to support the ALJ's determination that the Plaintiff could meet the lifting

7

requirements of medium work. *See Kurlan v. Berryhill*, No. 3:18CV62(MPS), 2019 WL 978817, at *4 (D. Conn. Feb. 28, 2019) (finding that phraseology such as "full motor strength" and "normal gait" does not "necessarily equate to intact functional abilities of the specific nature detailed in the RFC formulation—at least not without a supporting medical opinion that says so") (internal quotation marks and ellipses omitted). Moreover, the record contains ample evidence that the Plaintiff suffered from chronic back pain. Progress notes by Dr. Ivan Loker dated May 7, 2019 indicate that Plaintiff "has a history of chronic back pain" for which he took up to 800 mg of ibuprofen. R. 696. Dr. Loker noted that Plaintiff worked lifting boxes of newspapers and had back pain associated with work. *Id.* He took ibuprofen before or during work. *Id.* Plaintiff reported bilateral lower back pain, nonradiating and aching. *Id.* On examination, he had no tenderness to palpation, full range of motion, and negative straight leg raising. R. 697.

On August 22, 2019, the Plaintiff was seen by Dr. Jadeja, who noted that Plaintiff "has a history of chronic back pain" for which he takes ibuprofen 400 mg twice a day. R. at 573. Plaintiff complained of low back pain bilaterally that was "constant and aching in nature." *Id.* He told Dr. Jadeja that ibuprofen "eases" his pain and that he had not tried Tylenol. *Id.* He indicated that he had undergone physical therapy previously but was not interested in resuming it at the present time. *Id.* On examination, Dr. Jadeja noted that Plaintiff had "[t]enderness on palpation of lumbar spine," "no obvious deformities [or] erythema of the back," and full range of motion of the back at the hips. R. 575.

Notes dated November 7, 2019 by Dr. Perez state that Plaintiff suffers from "chronic lower lumbar back pain with some aspects of sciatica" and that in the past he had taken ibuprofen "upwards of 800 mg multiple times in the day." R. 577. Upon examination, he had normal range of motion with no edema, tenderness or deformity. R. 579. Dr. Perez assessed Plaintiff with

neuropathic spondylopathy of lumbar spine.  *Id.*  Dr. Perez noted that Plaintiff suffered from chronic back pain and that the pain was "stable."  *Id.*  He recommended home exercises and lidocaine patches to assist with the pain. *Id.*  Plaintiff was seen again November 27, 2019 by Dr. Jadeja for back pain at which time he requested a referral for physical therapy.  R. 710.

According to a December 10, 2019 note from physical therapy, Plaintiff described his back pain as a 7 on a scale of 1 to 10, and that he had difficulty bending, sleeping, and climbing stairs. R. 676.  The physical therapist noted that Plaintiff's range of motion was limited, and that upon palpation, Plaintiff was "[t]ender and tight throughout lumbar region."  R. 678.  In sum, none of these medical records support the RFC finding of medium work; indeed, none contains a functional assessment of the Plaintiff's physical abilities.  *Guillen v. Berryhill*, 697 F. App'x 107, 108-09 (2d Cir. 2017) (remanding, among other things, for the Commissioner to "request a medical source statement from [the claimant's] treating physician including an assessment of [the claimant's] limitations vis-à-vis her ability to work" and noting that "[u]nlike *Tankisi*, the medical records obtained by the ALJ do not shed any light on [the claimant's] residual functional capacity").

Because neither the Plaintiff's work history, activities of daily living, or medical records illuminate his functional capabilities, they do not constitute "sufficient evidence" in support of the ALJ's RFC determination.  *Tankisi*, 521 F. App'x at 34.  Remand is therefore warranted.  *See Kurlan v. Berryhill*, No. 3:18CV62(MPS), 2019 WL 978817, at *4 (D. Conn. Feb. 28, 2019) (finding that plaintiff's medical records, hearing testimony, and activities of daily living did not provide substantial evidence in support of RFC determination where the ALJ rejected medical opinions in the record); *see also Borrero v. Saul*, No. 3:19CV1306(TOF), 2020 WL 7021675, at *10-11 (D. Conn. Nov. 30, 2020) (remanding for further development of the record where no medical opinion supported the RFC and the medical records and Plaintiff's activities of daily living

fail to provide support for the RFC).

On remand, the ALJ "should develop the record as necessary to obtain opinions as to the Plaintiff's functional limitations from [his] treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a functional capacity evaluation, and thoroughly explain his findings in accordance with the regulations." *Dowling v. Saul*, No. 3:19CV01170 (WIG), 2020 WL 2079113, at *7 (D. Conn. Apr. 30, 2020).

## IV.   Conclusion

For the reasons set forth above, Plaintiff's motion, ECF No. 15, is GRANTED and the Commissioner's motion, ECF No. 17, is DENIED. The case is hereby REMANDED to the Commissioner for further proceedings.

IT IS SO ORDERED.

Dated: February 7, 2022
       Hartford, Connecticut

                                                  /s/
                                    Michael P. Shea, U.S.D.J.